In the Matter of the Estate of ELISHA W. ENSIGN,
Deceased.

*Statute of distributions — 3 R. S. (6th ed.), 104, sec. 90 — a divorced woman is not
the "widow" of her former husband upon his death.*

A woman who has procured from the courts of this State a decree for a divorce
from her husband upon the ground of his adultery, is not, at the time of his
death, his "widow" within the meaning of that term as used in the statute
of distributions, and is not entitled to a distributive share of his personal
estate.

Appeal from a decree of the Surrogate's Court of Erie county.

*Adelbert Moot,* for Jennie Ensign Martin, petitioner, appellant.

*George M. Osgoodby,* special guardian for infant May Ensign.

*George U. Loveridge,* for George W. Holt, executor, etc.

*Rogers, Locke & Milburn,* for respondent Cornelia Hamilton.

Haight, J.:

The appellant Jennie Ensign Martin presented a petition to the
Surrogate's Court of Erie county praying for a citation to issue to
Cornelia Hamilton, as sister of Elisha W. Ensign, deceased, and as
administratrix with will annexed of said deceased, and to the other
parties interested, requiring them to appear in court and show cause
why the probate of the pretended last will and testament of Elisha
W. Ensign, deceased, should not be wholly revoked and annulled ;
and to further show cause why Cornelia Hamilton should not be
removed from her position as administratrix, etc.   On the presenting
of such petition citations were issued to the parties therein named,
and on the return day thereof an answer was interposed by Cornelia
Hamilton, and the issues formed thereby were tried before the surro-
gate, who found as facts that Elisha W. Ensign died on the 1st day of
October, 1877, then being a resident of the city of Buffalo ; that at the
time of his decease he left him surviving Charles Ensign, who was
his brother, and Cornelia Hamilton, who was his sister.   That they
were of full age and were his only next of kin and heirs-at-law ;
that he left a last will and testament which had been duly proved

and admitted to probate; that Cornelia Hamilton had been appointed administratrix with the will annexed; that no notice of the probate of the will had been served upon the petitioner. That on the 24th day of May, 1867, at Cincinnati, in the State of Ohio, Elisha W. Ensign was married to the petitioner, Jennie Ensign Martin, and that they thereafter lived and cohabited together as man and wife until the year 1875; that on the 10th day of November, 1869, issue was born of such marriage, which died within twenty-four hours of its birth, and that there was no other issue; that on the 28th day of October, 1875, the petitioner commenced an action of divorce against her husband Elisha W. Ensign, in the Court of Common Pleas, in and for the city and county of New York, upon the ground of his adultery, and thereafter such proceedings were had in the action, that on the 13th day of December, 1875, the court rendered a judgment in the action, ordering and adjudging that the marriage between the petitioner and Elisha W. Ensign be dissolved; and that each of the parties be freed from the obligations thereof; and it further ordered and adjudged that it be lawful for the petitioner to marry again, but not the said Elisha W. Ensign. It was further adjudged that Elisha W. Ensign pay to the petitioner as alimony the sum of $25,000, and also the further sum of $13,500, being the amount of a mortgage upon premises owned by her. It was further found as a fact by the surrogate that after the death of Elisha W. Ensign, Charles Ensign, as executor of the last will and testament of Elisha W. Ensign, paid to the petitioner $10,000, being the balance due for the money directed to be paid by the judgment, and that the petitioner thereupon executed a release of all her dower right in and to the lands and real estate of Elisha W. Ensign. In the month of December, 1877, the petitioner intermarried with one Edward Martin, whose wife she now is.

The surrogate found, as conclusions of law, that the petitioner is not entitled to any distributive share of the personal estate of Elisha W. Ensign, and that she was not, therefore, a necessary party, or entitled to notice of the proceedings for the probate of his will. The facts as found are undisputed.

The question which we are thus called upon to determine is whether or not the petitioner, as widow, is entitled to a distributive share of the personal estate of Elisha W. Ensign, deceased. The statute

provides that "where the deceased shall have died intestate, the surplus of his personal estate remaining after payment of debts, and where the deceased left a will, the surplus remaining after the payment of debts and legacies, if not bequeathed, shall be distributed to the widow, children or next of kin of the deceased in manner following: 1. One-third part thereof to the widow, and all the residue, by equal portions, among the children and such persons as legally represent such children, if any of them shall have died before the deceased. 2. If there be no children nor any legal representatives of them, then one moiety of the whole surplus shall be allotted to the widow, and the other moiety shall be distributed to the next of kin of the deceased entitled under the provisions of this section," etc. (3 R. S. [6th ed.], 104, § 90.)

It will be observed that the statute gives a distributive share to the *widow*. And it thus becomes necessary to determine whether or not the petitioner became a widow within the meaning of this provision of the statute. The statute, in force at the time of granting the petitioner the judgment of divorce, provided that divorces may be decreed and marriages may be dissolved whenever adultery has been committed by any husband or wife. That if a wife be the complainant, and a decree dissolving the marriage be pronounced, the court may make a further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, and to provide such allowance to the complainant for her support as the court shall deem just, having regard to the circumstances of the parties respectively. That whenever a marriage be dissolved pursuant to the provisions of the statutes, the complainant may marry again during the lifetime of the defendant, but no defendant convicted of adultery shall marry again until the death of the complainant. (3 R. S., 156, 157.)

Under the provisions of the statute the decree of divorce dissolves the marriage. In other words, it annuls and terminates the marriage. The parties are separated and freed from the obligations of the marriage contract, but the party convicted of adultery shall not be permitted to marry again until the death of the innocent party. It is contended on the part of the appellant that the decree of divorce was not intended to cut off or deprive the innocent party of her rights to share in the personal estate of her hus-

band. That on the death of Ensign she became his widow within the meaning of the statute, so as to entitle her to a distributive share of his personal estate. The authorities upon this question are exceedingly meagre, and so far as this State is concerned the question appears to be new.

Bishop, in his work on Marriage and Divorce (vol. 2), at section 705, says : " Coming now to consider the effect of the dissolution of a valid marriage upon property rights, we must remember that the decree of divorce, so far from undoing the original marriage, expressly affirms it, and, therefore, does not restore the parties to their former condition, but places them in a new one. Consequently all transfers of property which were actually executed, either in law or fact, abide ; for example, the personal estate of the wife, reduced to possession by the husband, remains his after the divorce the same as before. But we shall see, in subsequent sections, that this divorce puts an end to all rights depending upon the marriage, and not actually vested, as dower in the wife, curtesy in the husband, and his right to reduce to possession her choses in action. When, after this divorce, the man dies, the woman is not his widow, and, therefore, *no rights which the law gives to widows are hers.*"

In the case of *Wait* v. *Wait* (4 N. Y., 95), it was held that a divorce dissolving the marriage contract on the ground of adultery of the husband, does not deprive the wife of her right of dower in his real estate acquired during the coverture.

In the case of *Kade* v. *Lauber* (16 Abb. [N. S.], 288), it was held that a woman divorced on the ground of the adultery of her husband, is not entitled to dower in lands of which he became seized after the divorce, but otherwise as to lands of which the husband was seized during the coverture and before the divorce. It was also held that the decree of divorce under the statute puts an end to the marriage ; that the marriage contract is dissolved from and after the decree.

These decisions are placed upon the ground that the inchoate right of dower becomes a vested interest as soon as the husband is seized ; and that, although the divorce may dissolve and terminate the marriage, it does not take away a vested interest in real estate previously acquired.

In the case of *Moore* v. *Hegeman* (27 Hun, 68) the wife of one

Moore brought an action for divorce on the ground of his adultery, and procured a judgment granting her a divorce and forbidding him to marry again during her life. Thereafter Moore went with a woman to the State of New Jersey and married her, returning to this State after the ceremony, and continued to reside here. The statute of New Jersey provided that all marriages where either of the parties shall have a *former* husband or wife living at the time of such marriage shall be invalid from the beginning and absolutely void, and the issue thereof shall be illegitimate. It was held that Moore had no *former* wife living at the time of the New Jersey marriage, within the meaning of the statute, and that the children born in this State of the second marriage during the lifetime of the first wife were legitimate. BARNARD, P. J., in delivering the opinion of the court, says : " The rule probably now is that the divorce severs entirely the marriage relations. The divorced wife is no longer wife, either for dower or distribution in the divorced husband's real or personal property."

In the case of *Van Voorhis* v. *Brintnall* (86 N. Y., 18), a judgment of divorce had been granted in this State dissolving the marriage of Elizabeth Barker and her husband on the ground of his adultery. It also adjudged that it should not be lawful for him to marry again until· her death. Subsequently he married another woman at the city of New ·Haven, in the State of Connecticut, during the lifetime of his former wife, and after such marriage he immediately returned and lived in this State. It was held that the marriage being lawful in the State of Connecticut must be recognized as valid in the courts of this State.

In the case of the *People* v. *Faber* (92 N. Y., 146), it appeared that the defendant was married in 1878. In 1881 a judgment was rendered dissolving the marriage on the ground of his adultery, and afterwards during the life of the plaintiff in that action he married another woman in this State. It was held that such second marriage was in violation of the statute prohibiting a party convicted of adultery in a divorce action from marrying again in this State during the lifetime of the other party, and that he was guilty of the crime of bigamy. RAPALLO, J., in delivering the opinion of the court, after quoting the statute constituting the crime of bigamy, says the language clearly implies that, notwithstanding, such a person is

placed in the situation of having a husband or wife living *for the purposes of the act.*

In the case of the *Final Accounting in the Estate of Samuel Webb* (1 Tuck. Rep., 372), it was held that where Webb was divorced from his wife by the Supreme Court of this State and forbidden to remarry during her lifetime, but went to reside in New Jersey and remarried there, and afterwards returned to this State and died, leaving a widow and children of the second marriage; that the second marriage was valid and the widow and children of that marriage were entitled to his personal property to be set apart under our statutes; that the interest which the first wife had in her husband's property had been liquidated in the shape of alimony paid to her under the judgment of the Supreme Court during the lifetime of Webb.

In the case of *Chenowith* v. *Chenowith* (14 Ind., 2), it was held that if a married woman obtains a divorce and alimony, she has no interest as survivor in the estate of her husband. HANNA, J., in delivering the opinion of the court, says: "Her marital interest as survivor depended upon her being his wife at the time of his death."

In the case of *Dobson* v. *Butler* (17 Mo., 87), it was held that a woman who had been divorced from her husband is not, at his death, entitled, under the statute, to administration upon his estate. RYLAND, J., in delivering the opinion of the court, says: "That it is the opinion of the court that it is manifest that the provisions of the statute were for the benefit of the widow and family, and the widow therein named must have been, at the time of the death, the wife of the husband; that the relation of husband and wife must have existed between them up to the death; that a wife, when divorced from her husband, is not, and cannot be the widow contemplated in the statute of administration."

So much for the authorities bearing upon the question. From them it appears that the wife, notwithstanding the divorce, is entitled to the inchoate dower interest of which she became vested during coverture. The prohibitory clause of the statute preventing remarriage of the other party, still continues the marriage to the extent that the person may be convicted of bigamy in case of remarriage in this State. But as to everything else, the tendency of the authorities is to the effect that the decree of divorce entirely dissolves and terminates the marriage relation, and that this term-

inates also the property rights of one in the estate of the other. That the marriage, with all its incidents, rights and duties, except as preserved by the statute referred to, is severed and terminated. That this is so would appear to be the legislative construction, as appears from recent enactments. It is now provided that a judgment dissolving the marriage does not affect the plaintiff's inchoate right of dower in the real property of which the defendant is or was theretofore seized. (Code Civil Pro., § 1759.)

And now a party may be relieved from the prohibitory clause of the statute and permitted to remarry, upon producing satisfactory proof that the complainant has remarried, that five years have elapsed since the decree of divorce was rendered, and that the conduct of the defendant since the dissolution of the marriage has been uniformly good. (Chap. 321, Laws of 1879.) This section was left unrepealed by the general repealing act of 1880, and was not repealed by the provisions of the Code. So that after the lapse of five years the defendant in a divorce action, even though convicted of adultery, may be permitted to marry again.

If the appellant's view is correct a man and wife at the age of twenty-two may be divorced; within five years thereafter both parties may be lawfully married to other persons, with the leave and approbation of the court; fifty years thereafter the husband may die; can it be that under such circumstances the law would recognize him as having two widows, each entitled to a distributive share in his personal estate? We think not. Such does not appear to us to be the policy of the law.

It is argued that the innocent party in a divorce action ought not to be made to suffer for the misconduct of the other. Very true; and the courts and the legislature have been careful to protect all of the vested rights of such party, but the wife has no vested interest in the personal estate of her husband. She is only given a distributive share on the death of her husband and her becoming his widow. But in lieu of this the courts are permitted by the statute, upon granting the decree of divorce, to make a suitable allowance for her support, having regard to the circumstances of the parties.

In the case under consideration the appellant was allowed and paid $37,500 as alimony. She still retained her inchoate dower interest in the real estate of the deceased. It does not appear what

the financial circumstances of Mr. Ensign were at the time of the granting of the decree of divorce. We must, therefore, assume that the allowance made was, within the contemplation of the court making it, reasonable and proper and her fair share in his personal estate. To hold that a woman who procures a divorce from her husband thereafter continues his wife, so as to become his widow and entitled to a distributive share in his personal estate, would involve anomalies in the law which were never contemplated. At the time of procuring the divorce the husband may have had no personal estate whatever; five years thereafter he may be permitted to remarry, and through the aid and industry of his second wife may acquire a large personal estate. Upon his death, shall his former wife be permitted to take a distributive share thereof as his widow? Shall she, as his widow, be entitled to occupy his house for the forty days allowed by the statute, and in the meantime be supported out of the estate? Shall she be entitled to have the appraisers set off to her as widow, in the inventory, all spinning wheels, weaving looms, knitting machine, sewing machine, and stoves put up or kept for the use of his family, the family Bible, the family pictures and school books, sheep to the number of ten with their fleeces, the yarn and cloth manufactured from the same, one cow, two swine and the pork of such swine, and necessary food for such swine, sheep or cow, for sixty days, and all necessary provisions and fuel for such widow for sixty days after the death of the deceased, and all necessary wearing apparel, beds, bedsteads and bedding, necessary cooking utensils, one table, six chairs, twelve knives and forks, etc.? What, then, would become of the other widow? What provisions could be made for her? What house of her late husband shall she occupy? And yet, this condition of things would naturally follow the interpretation of the statute contended for by the appellant. It appears to us that such an interpretation is in conflict with the spirit and intent of the law, and that it would be unwise and unjust.

Other questions were argued upon the appeal, but under the view which we have taken it becomes unnecessary to here consider them.

The decree of the surrogate should be affirmed, with costs.

SMITH, P. J., and BRADLEY, J., concurred; BARKER, J., not voting.

So ordered.